IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,<br><br>              Plaintiff,<br><br>     vs.<br><br>CLEMENT SANTIAGO,<br><br>              Defendant. | CIVIL NO. 20-00349 JAO-RT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO DISMISS** |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO DISMISS**

In this insurance declaratory action, Plaintiff State Farm Mutual Automobile Insurance Company ("Plaintiff") seeks a determination that it has no obligation to provide underinsured motorist ("UIM") benefits to Defendant Clement Santiago ("Defendant") following Defendant's injuries in a car accident. Plaintiff moves for summary judgment on the basis that one of the original named insureds on two policies at issue had previously rejected UIM coverage and therefore Plaintiff was not required to make new offers of UIM and uninsured motorist ("UM") coverage once that original named insured died. *See* ECF No. 20. After Plaintiff moved for summary judgment, Defendant moved to dismiss Plaintiff's Complaint, arguing

that the Court should abstain from exercising jurisdiction due to a pending case in state court. ECF No. 35. For the following reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion to Dismiss.

## I.    BACKGROUND

### A.    Facts

Unless otherwise indicated, the facts herein are undisputed.

Central to this litigation are two policies Plaintiff issued to Defendant's mother-in-law, Edwardine Reiss-Rogers ("Edwardine"), that covered Plaintiff because he resided with Edwardine at the time he sustained injuries following a motor vehicle accident. ECF No. 21 ¶¶ 1, 4; ECF No. 1 ¶ 14. One policy — Policy No. L03-8183-E20-51B — insured a 1998 Chevrolet K2500 ("Chevrolet Policy"), and the other — Policy No. 027-8168-F10-51B — insured a 2012 Toyota Highlander ("Toyota Policy") (collectively, the "Edwardine Policies"). *Id.* ¶¶ 4, 6.

The Chevrolet Policy was first issued on May 20, 1998 to Douglas Rogers ("Douglas"), who was Edwardine's spouse, and Edwardine as the named insureds. ECF No. 21 ¶ 9. When Douglas applied for the Chevrolet Policy, he stated that he would be driving the Chevrolet 100% of the time and that Edwardine would be driving it 0% of the time. ECF No. 28-5 at 3. As part of the application for the Chevrolet Policy, Douglas completed a form entitled "Acknowledgment of Offer

of Uninsured and Underinsured Motorist Coverage (Including Offer of Stacking Option) and Coverage Selection or Rejection" ("Chevrolet Acknowledgment of Offer").  ECF No. 21 ¶ 10; ECF No. 21-3.  The Chevrolet Acknowledgment of Offer contained a document entitled "Hawaii Uninsured and Underinsured Motor Vehicle Coverages," which explained the purpose of UM and UIM coverage, the option to stack UM and UIM coverage, and examples of how stacked and non-stacked UM and UIM coverage could impact the total coverage available for a motor vehicle accident.  ECF No. 21 ¶ 10; ECF No. 21-3.

When he completed the Chevrolet Acknowledgement of Offer, Douglas agreed and acknowledged that Plaintiff had offered him UM and UIM coverage with limits equal to the Chevrolet Policy's bodily injury liability coverage limit; that non-stacked UM and UIM coverage in such amount was available for an additional $39.60 and $48.00, respectively, to the total policy premium; that he was rejecting UM and UIM coverage on behalf of all insureds; and that his rejection would apply to all renewal and replacement policies.  ECF No. 21 ¶¶ 11–12; ECF No. 21-3.

The Toyota Policy was issued on June 10, 2008 to Douglas and Edwardine as the named insureds.  ECF No. 21 ¶ 14.  Like the Chevrolet Policy, Douglas completed an "Acknowledgment of Offer of Uninsured and Underinsured Motorist Coverage (Including Offer of Stacking Option) and Coverage Selection or

Rejection" ("Toyota Acknowledgment of Offer") as part of his application for the Toyota Policy.  *Id.* ¶ 15.  The Toyota Acknowledgment of Offer contained terms and disclosures substantially similar to those in the Chevrolet Acknowledgment of Offer.  *See* ECF Nos. 21-3, 21-6.  However, the policy number that was handwritten on the Toyota Acknowledgment of Offer wholly differed from the policy number that appeared on Declarations pages for the Toyota Policy.  *Compare* ECF No. 21-6 at 2 (Policy No. 51-3160-C79), *with* ECF No. 21-5 at 1 (Policy No. 27-8168-F10-51), *and* ECF No. 21-7 at 1 (Policy No. 027-8168-F10-51B).  Douglas rejected UM and UIM coverage under the Toyota Policy subject to the same acknowledgments and agreements contained in the Chevrolet Policy.  ECF No. 21 ¶ 16; ECF Nos. 21-3, 21-6.

The Court disregards Defendant's assertion that Edwardine "did not know of any alleged offer, rejection, or waiver of UM/UIM coverage on the Chev[rolet] and [Toyota] Policies," because the only documentation in support is a substantially similar statement in a declaration by *defense counsel*, and not by *Edwardine*.  ECF No. 29 ¶ 24; ECF No. 28-1 ¶ 9.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412–13 (9th Cir. 1995) (explaining that attorney

4

declarations in opposition to a motion for summary judgment are "entitled to no weight because the declarant d[oes] not have personal knowledge" (citations omitted)).

In 2012, Plaintiff was informed that Douglas passed away and removed him as a named insured on the Chevrolet Policy and the Toyota Policy, though Defendant maintains that Edwardine was instead issued new policies in her name only.[1]  ECF No. 21 ¶ 18; ECF No. 21-2 ¶¶ 14–15; ECF Nos. 21-4, 21-7; ECF No. 29 ¶ 12.  Edwardine has been a named insured on the Chevrolet Policy and the Toyota Policy since each were issued, and has remained the sole named insured since Douglas's removal from the policies.  ECF No. 21 ¶¶ 17, 19.

Defendant states that the premiums decreased after Douglas's death from $184.02 to $153.83 on the Chevrolet Policy and from $387.23 to $303.75 on the

---

[1]  In his Separate and Concise Statement of Facts, Defendant states that upon Douglas's death, Edwardine was issued two *new* policies with new policy numbers and different premiums, but provides no citation to any materials in the record that support that statement.  *See* ECF No. 29 ¶¶ 8, 12.  In any event, the policy number on the Chevrolet Policy was listed as LO3 8183-E20-51A on a Declarations Page for the Chevrolet Policy issued in 2009, ECF No. 28-2 at 2, and L03 8183-E20-51B on a Declarations Page issued after Douglas's death.  ECF No. 21-4.  Likewise, the Declarations Page for the Toyota Policy issued before Douglas's death contains the policy number 27 8168-F10-51, ECF No. 28-3 at 2, while the policy number on a Declarations Page issued after Douglas's death is listed as 027 8168-F10-51B.  ECF No. 21-7.  The Declarations Page for the Chevrolet Policy states that the policy replaced policy number L038182-51, ECF No. 28-3 at 2, while the Declarations Page for the Toyota Policy states that the policy replaced policy number 0278168-51A.  ECF No. 21-7.

Toyota Policy.  ECF No. 29 ¶¶ 17, 22–23.  The Declarations Pages issued after Douglas's death, to which Defendant cites for corroboration, show only that there was a premium of $73.22 for August 27, 2012 to November 20, 2012 of $73.22 and a total renewal premium for May 20, 2012 to November 29, 2012 of $158.83 for the Chevrolet Policy,[2] ECF No. 28-4 at 2, and a premium of $173.74 for August 27, 2012 to December 10, 2012 and a total renewal premium for June 10, 2012 to December 10, 2012 of $303.75 for the Toyota Policy.  ECF No. 28-4 at 3.  While Defendant included Declarations Pages for the Edwardine Policies from 2008, ECF No. 28-3, there is no evidence in the record that contains the premiums for the policy periods immediately preceding Douglas's death.

On September 11, 2017, Defendant sustained injuries following a motor vehicle accident in which the Honda Accord ("Accord") he was driving was rear-ended by a vehicle operated by Joseph Lelm ("Lelm").[3]  ECF No. 21 ¶ 1.  He

---

[2]  It appears Defendant's statement in his Statement of Facts stating that the Chevrolet Policy premium decreased to $153.83 is a typographical error, given that the evidentiary support to which he cites shows that the premium was $158.83.

[3]  At the time of the accident, Lelm was insured under a motor vehicle insurance policy issued by Progressive Insurance.  ECF No. 21 ¶ 2.  Defendant settled his bodily injury claim against Lelm for the $20,000 bodily injury liability limit under the Progressive policy.  *Id.* ¶ 3.  Defendant also received payment under two policies Plaintiff issued — the policy insuring the Accord ("Accord Policy") and a separate policy issued to Defendant ("Santiago Policy").  *Id.* ¶ 4.  Plaintiff tendered to Defendant the $20,000 UIM limits under both the Accord Policy and the Santiago Policy.  *Id.* ¶ 5.

sought coverage from Plaintiff under Edwardine's policies. *Id.* ¶ 8. The Edwardine Policies did not include UM/UIM coverage, and Plaintiff rejected his claims. *Id.*; ECF Nos. 21-4, 21-7.

**B.    Procedural History**

Plaintiff commenced this action by filing its Complaint for Declaratory Judgment on April 14, 2020, identifying diversity of citizenship between the parties as the sole basis of the Court's jurisdiction. ECF No. 1. Plaintiff seeks only a binding declaration that it has no duty to provide Defendant with UIM coverage under either the Chevrolet Policy or the Toyota Policy. *Id.* at 7.

On June 25, 2021, Plaintiff moved for summary judgment on the Complaint. ECF No. 20. Defendant filed his Opposition on July 14, 2021. ECF No. 28. On July 21, 2021, Plaintiff filed its Reply. ECF No. 38.

On July 12, 2021, Defendant and Edwardine filed suit against Plaintiff and Douglas's insurance agent and agency in the Circuit Court of the Third Circuit, State of Hawaiʻi, seeking a declaratory judgment that Plaintiff is obligated to provide UIM benefits to Defendant under the Chevrolet Policy and the Toyota Policy and asserting claims for negligent misrepresentation, unfair and deceptive acts or practices, breach of contract, bad faith claims handling, and breach of fiduciary duty (the "State Court Action"). ECF No. 28-7.

On July 20, 2021, Defendant filed his Motion to Dismiss. ECF No. 35.

On July 21, 2021, Defendant filed a motion to continue the hearing on Plaintiff's Motion for Summary Judgment.  ECF No. 39.  The Court issued an entering order denying Defendant's Motion to Continue on July 23, 2021.  ECF No. 43.

On July 28, 2021, Plaintiff filed its Opposition to Defendant's Motion to Dismiss.  ECF No. 44.

The Court held a hearing on Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss on August 6, 2021.  ECF No. 47.

On August 12, 2021, Plaintiff filed a Supplemental Memorandum addressing the issue of whether there is a genuine issue of fact as to whether Douglas waived UM/UIM coverage for the Toyota Policy given that the policy number he listed on the Toyota Acknowledgment of Offer does not match the policy number for the Toyota Policy depicted on other documents, which argument Defendant raised for the first time at the hearing.  ECF No. 49.

## II.    DEFENDANT'S MOTION TO DISMISS

Defendant argues in his Motion to Dismiss that the Court should abstain from exercising jurisdiction over the Complaint under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and should dismiss the action.[4]

---

[4]  Defendant also raises the abstention argument in his Opposition to Plaintiff's Motion for Summary Judgment.  *See* ECF No. 28 at 10–15.

ECF No. 28 at 10–16; ECF No. 35.

## A.    Legal Standard

The Court has jurisdiction over this matter under the Declaratory Judgment

Act, which provides in pertinent part:

> any court of the United States, upon the filing of an appropriate
> pleading, may declare the rights and other legal relations of any
> interested party seeking such declaration, whether or not further
> relief is or could be sought.  Any such declaration shall have the
> force and effect of a final judgment or decree and shall be
> reviewable as such.

28 U.S.C. § 2201(a).  The Court has the discretion "to determine whether it is

'appropriate' to grant jurisdiction in a declaratory relief action based in

diversity." *Gov't Emps. Ins. Co. v. Dizol*, 176 F. Supp. 2d 1005, 1017 (D. Haw.

2001) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89 (1995)) (other

citation omitted); *see also Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800,

803 (9th Cir. 2002) ("[T]he decision whether to exercise jurisdiction over a

declaratory action lies in the sound discretion of the district court.").  "[T]here is

no presumption in favor of abstention in declaratory actions generally, nor in

insurance coverage cases specifically." *Gov't Emps. Ins. Co. v. Dizol* ("*Dizol*"),

133 F.3d 1220, 1225 (9th Cir. 1998) (en banc); *see Huth*, 298 F.3d at 803.  In fact,

there is no authority "'barr[ing] [insurers] from invoking diversity jurisdiction to

bring a declaratory judgment action against an insured on an issue of

coverage.'" *Dizol*, 133 F.3d at 1225 (quoting *Aetna Cas. & Sur. Co. v. Merritt*,

974 F.2d 1196, 1199 (9th Cir. 1992)).

The Court's discretion is governed by the factors enumerated in *Brillhart*:

(1) avoidance of needless determination of state law issues; (2) discouragement of

the filing of declaratory actions as a means of forum shopping; and (3) avoidance

of duplicative litigation.  *See Dizol*, 133 F.3d at 1225 (footnote and citation

omitted).  Courts in the Ninth Circuit also consider whether there is a parallel state

proceeding.  *See id.*; *Phx. Assurance PLC v. Marimed Found. for Island Health

Care Training*, 125 F. Supp. 2d 1214, 1219–20, 1222–23 (D. Haw. 2000).

**B.   Discussion**

Here, Plaintiff's request for relief is limited to a declaration that it has no

obligation to provide UIM benefits to Defendant under the Chevrolet Policy and/or

the Toyota Policy.  Because the instant action is declaratory in nature, jurisdiction

remains discretionary.  The Court therefore considers each *Brillhart* factor in turn.

    1.    <u>Needless Determination of State Law</u>

Needless determination of state law may occur when:  there are parallel state

proceedings involving precise state law issues; Congress expressly reserved the

area of law for the states; or there is no compelling federal interest, *e.g.*,

jurisdiction based solely on diversity.  *See Cont'l Cas. Co. v. Robsac Indus.*, 947

F.2d 1367, 1371 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d

1220.

a. *Parallel State Proceeding*

Defendant argues that the State Court Action constitutes a parallel state proceeding because both this action and the State Court action arise out of the same factual circumstances; Plaintiff is a party in both actions; and the State Court Action also involves a determination of the issue on which Plaintiff seeks declaratory relief in this action.  ECF No. 35-1 at 9.  Plaintiff responds that there was no parallel proceeding when this action began or even when it moved for summary judgment.  ECF No. 44 at 4.

When a parallel state proceeding involving the same issues and parties *exists at the time the federal declaratory judgment action is filed*, there is a presumption that the declaratory action should be heard in state court.  *See Dizol*, 133 F.3d at 1225 (citation omitted).  This is because it would "[o]rdinarily . . . be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  *Brillhart*, 316 U.S. at 495.

If the Court were simply to compare the claims asserted in this action and the State Court Action, the State Court Action would constitute a parallel state proceeding because there, Defendant seeks a declaration that Plaintiff is entitled to provide him with UIM benefits, among other claims, which is the precise issue

11

before the Court in this action.  The State Court Action, however, did not exist

when Plaintiff commenced this action (or even when Plaintiff moved for summary

judgment) and was only recently filed.  Indeed, the delayed filing of the state court

action here abrogates the rationale behind the presumption in favor of declining

jurisdiction:  it would neither be uneconomical nor vexatious for the Court to

exercise jurisdiction where this case commenced more than a year before the state

court matter and where the filing of the state court case *followed* the motion for

summary judgment.  As such, the existence of a parallel state action weighs neither

in favor nor against exercising jurisdiction in this case.

        b.    *Area of Law Reserved for the States*

Defendant contends that this case only involves matters of state insurance

law that can be decided in state court, ECF No. 35-1 at 11, while Plaintiff argues

that the Hawaiʻi Supreme Court has already decided the legal standards for the

issues in this case, namely whether there is a valid rejection of UM/UIM coverage

and when a new offer of such coverage is required, and that federal district courts

have decided cases involving these issues.  ECF No. 44 at 6.

The dispute in this declaratory judgment action — solely implicating

insurance law — concerns an area of law expressly left to the states by Congress

through the McCarran-Ferguson Act.  *See Robsac*, 947 F.2d at 1371 (citing 15

U.S.C. §§ 1011–12).  Courts abstain from hearing diversity declaratory judgment

actions for the construction of insurance policies when "doubtful, unresolved state law issues are present in a field of law where the state has shown its interest by significant legislative activity and administrative regulation."  *Smith v. State Farm Ins. Co.*, 615 F. Supp. 453, 455 (D. Haw. 1985) (citation omitted).  This is because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulations."  *Emps. Reinsurance Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995) (alteration in original) (internal quotation marks and citations omitted), *overruled on other grounds by Dizol*, 133 F.3d 1220.

In assessing whether the exercise of jurisdiction over a declaratory judgment action involves a needless determination of state law, courts focus on "'unsettled issues of state law, not fact-finding in the specific case.'"  *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (quoting *Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1118 (D. Alaska 1998)); *see Hartford Underwriters Ins. Co. v. Masters*, Civ. Nos. 10-00629 JMS-BMK, 11-00 174 JMS-BMK, 2011 WL 2173779, at *9 (D. Haw. June 2, 2011) ("Thus, the court assesses not merely whether the action raises a state law issue (which is the case for almost all diversity actions), but rather whether it presents an *unsettled* issue of state law.").  "When state law is unclear, '[a]bsent a strong countervailing federal interest, the federal court should not elbow its way . . . to

render what may be an "uncertain" and "ephemeral" interpretation of state law.'" *Davis*, 430 F. Supp. 2d at 1120 (alterations in original) (citation omitted).

The matters before the Court do not concern unsettled issues of state law. Whether Plaintiff was obligated to provide UIM benefits to Defendant is based on clearly established Hawaiʻi law already addressed in this District. *See, e.g., Lee v. Gov't Emps. Ins. Co.*, 911 F. Supp. 2d 947, 969 (D. Haw. 2012), *aff'd*, 620 F. App'x 610 (9th Cir. 2015); *Smith v. Liberty Mut. Fire Ins. Co.* ("*Smith*"), Civil 15-00128 LEK-KJM, 2017 WL 11143899, at *13 (D. Haw. May 31, 2017). The Court is capable of deciding the issues presented here and doing so will not result in the unnecessary determination of state law.

### c. *Absence of Compelling Federal Interest*

Defendant argues there is no federal interest present here because this case involves only an insurance coverage question arising under state law. ECF No. 35-1 at 11. Plaintiff does not argue that any federal interest is at stake here, *see generally* ECF No. 44, nor could the Court discern one. As "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir," *Robsac*, 947 F.2d at 1371, on balance, the first *Brillhart* factor weighs only slightly — if at all — in favor of dismissal.

### 2. Forum Shopping

Plaintiff argues that Defendant engaged in forum shopping by interposing

the State Court Action almost a year into this case, ECF No. 44 at 3–5, while

Defendant does not address the issue of forum shopping.  *See generally* ECF No.

35.  Because diversity jurisdiction provides a basis to bring suit in federal court,

Plaintiff did not engage in forum shopping.  *See First State Ins. Co. v. Callan*

*Assocs., Inc.*, 113 F.3d 161, 162 (9th Cir. 1997) ("Although occasionally

stigmatized as 'forum shopping,' the desire for a federal forum is assured by the

constitutional provision for diversity jurisdiction and the congressional statute

implementing Article III.").  The same cannot be said about Defendant.

Plaintiff commenced this action on August 14, 2020, ECF No. 1, and moved

for summary judgment on June 25, 2021.  ECF No. 20.  Defendant did not initiate

the State Court Action until nearly eleven months after Plaintiff filed this action.

ECF No. 28-7.  Indeed, Defendant did not file the State Court Action or move to

dismiss this action until after Plaintiff moved for summary judgment.  In a

somewhat similar context, the Ninth Circuit affirmed a district court's

characterization of this sort of behavior as an effort to "wip[e] the slate clean and

start[] . . . litigation anew in state court on the eve of [a] federal court trial" that

amounted to forum shopping by the defendants.  *Am. Cas. Co. of Reading v.*

*Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999) (internal quotation marks omitted).

The Court likewise finds that Defendant's efforts to deprive the Court of

jurisdiction so that he can effectively restart the case in state court is a naked

attempt at forum shopping.  Accordingly, this factor weighs strongly in favor of exercising jurisdiction.

      3.    <u>Duplicative Litigation</u>

Defendant argues that duplicative litigation would result if the Court exercises jurisdiction because Defendant asserted additional claims in the State Court Action that would still need to be resolved.  ECF No. 35-1 at 11–12. Plaintiff responds that judicial economy and the orderly administration of justice favor retaining jurisdiction to avoid emboldening parties from initiating state court proceedings in order to "reset" federal court proceedings.  ECF No. 44 at 7–8. Regardless of whether the Court exercises jurisdiction, two things will remain true. First, a court — either this Court or the state court — will decide the issue of whether Plaintiff must provide benefits to Defendant under the Edwardine Policies. Even if the Court were to assume that, for some reason, its ruling on this issue would not have preclusive effect in the State Court Action, abstaining would simply result in the relitigation of matters already fully briefed and heard by this Court.  As such, abstaining would not prevent duplicative litigation.  Second, the State Court Action will proceed as Defendant's additional claims against Plaintiff can only be litigated in that forum as they are not part of the action before this Court.  Accordingly, exercising jurisdiction neither creates nor avoids duplicative litigation.

Insofar as one factor weighs slightly in favor of abstaining and another factor weighs strongly in favor of exercising jurisdiction, the *Brillhart* factors weigh in favor of exercising jurisdiction.

4.   Other Factors

In addition to the *Brillhart* factors, the Court addresses other considerations identified in *Dizol*:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (some internal quotation marks and citation omitted). Defendant argues that the present controversy cannot be fully disposed of in this Court, retaining jurisdiction risks entanglement between federal and state courts, and that litigation would be more convenient in state court as the State Court Action would be litigated in the county with a significant relationship to the facts at issue here, but concedes that adjudication in federal court would clarify the relationship between the parties.  ECF No. 35-1 at 11–15.  Plaintiff argues that Defendant manufactured any risk of entanglement by initiating the State Court Action and is merely concerned about the preclusive effect of a judgment favorable

17

to Plaintiff issued by this Court.  ECF No. 44 at 7.

The Court finds that on balance, the *Dizol* factors also weigh in favor of retaining jurisdiction.  Although resolution of this action will not settle all aspects of the controversy as it will not dispose of Defendant's additional claims against Plaintiff asserted in the State Court Action, it will clarify the parties' legal obligations, particularly with respect to the central issue of whether Plaintiff must tender UIM benefits to Defendant.  *See Davis*, 430 F. Supp. 2d at 1122 (explaining that declaratory relief is appropriate to clarify the legal relationship between the parties where an insurer disputes its coverage obligation with regard to a third party's claim against the insured (citation omitted)).  Moreover, resolution of the instant action will not cause entanglement between the federal and state court systems and there is no evidence that Plaintiff engaged in procedural fencing or that it seeks a res judicata advantage.  On the contrary, it is Defendant that has engaged in procedural fencing by commencing the State Court Action and moving to dismiss this action after Plaintiff moved for summary judgment.  Any possible entanglement would result from Plaintiff's acts — not Defendant's "use of a declaratory action."  Last, the convenience of litigating in either forum is comparable.  And even if the Court imposes a stay at this time, the State Court Action and this action will remain in two forums.

For these reasons, the Court retains jurisdiction over this action and

addresses the substance of Plaintiff's Motion for Summary Judgment.

### III.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**A.   Legal Standard**

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  "This burden is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  *See id.* at 323–24; Fed. R. Civ. P. 56(c)(1).

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992) (citation omitted).  Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citation, internal quotation marks, and ellipsis omitted).  A district

court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## B.    Discussion

### 1.    Defendant's Request for a Federal Rule of Civil Procedure ("FRCP") 54(d) Continuance

Defendant argued in his Opposition that the Court should provide him with a continuance so that he can conduct discovery related to the Motion for Summary Judgment, ECF No. 28 at 16–20, and then filed a Motion to Continue expanding on those same arguments.  ECF No. 39.  FRCP 56(d) provides that when

> a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may:
>     (1) defer considering the motion or deny it;
>     (2) allow time to obtain affidavits or declarations or to take discovery; or
>     (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).[5]  FRCP 56(d) permits a district court to continue a summary judgment motion "upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment."  *California v.*

---

[5]  As Rule 56(d) is substantively identical to former Rule 56(f), the Court relies on caselaw addressing both.  *See* Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment.

*Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (interpreting the former FRCP 56(f)).

A party requesting a Rule 56(d) continuance bears the burden of (1) filing a timely application that specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion. *See Emps. Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1129–30 (9th Cir. 2004) (citations omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56(f) requires a party seeking postponement of a summary judgment motion to show how additional discovery would preclude summary judgment and why it cannot immediately provide specific facts demonstrating a genuine issue of material fact." (internal quotation marks, brackets, and citation omitted)). Moreover, the party seeking a Rule 56(d) continuance must demonstrate that it diligently pursued discovery. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion." (citations omitted)); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment." (citations omitted)).

Defendant has not met his burden under FRCP 56(d). Defendant argues that the oral and written depositions of an FRCP 30(b)(6) representative of Plaintiff and

Douglas's insurance agent are "essential to prove that a death of a policyholder is [a] substantial material change requiring a new 'rejection' or 'acceptance' of UIM coverage." ECF No. 28 at 18–19. As explained in Section III.B.4, *infra*, the issue of whether Douglas's death was a material change triggering an obligation on Plaintiff's part to provide Edwardine with a new offer of UM/UIM benefits is a question of law. Defendant has not explained what facts he may obtain in discovery that could possibly alter the Court's analysis of this issue.

Furthermore, Defendant has made no showing that he was diligent in pursuing discovery before summary judgment. The case commenced on August 14, 2020. ECF No. 1. Plaintiff moved for summary judgment on June 25, 2021, exactly two months prior to the dispositive motions deadline. ECF No. 20; ECF No. 16 at 2. Yet, Defendant apparently only commenced his discovery efforts on June 29, 2021, when he served two deposition notices on Plaintiff. ECF Nos. 25, 26. And Defendant has not articulated any reasonable basis for waiting until this point in the litigation to begin discovery.

The Court therefore denies Defendant's request for a continuance under FRCP 56(d).

2.   Whether the Toyota Acknowledgment of Offer Pertained to the Toyota Policy

At the hearing, Defendant argued — for the first time — that there was a genuine issue of material fact as to whether Douglas waived UM/UIM coverage

22

under the Toyota Policy because the policy number on the Toyota

Acknowledgment of Offer did not match the policy number for the Toyota Policy

depicted on the Declarations pages in the record.  While Defendant should have

raised this argument in his Opposition, he is correct that the policy number that

was handwritten on the Toyota Acknowledgment of Offer does not match the

policy number for the Toyota Policy.  *Compare* ECF No. 21-6 at 2, *with* ECF No.

21-5 at 1, *and* ECF No. 21-7 at 1.

The incongruous policy number on the Toyota Acknowledgment of Offer is

nonetheless insufficient to create a genuine issue of material fact.  Plaintiff's

Underwriting Team Manager explained that the Toyota Acknowledgment of Offer

was submitted as part of the Auto Application for the Toyota Policy, and that the

number purporting to be the policy number is in fact the Application Number for

the Toyota Policy.  ECF No. 49-1 ¶ 4.  Defendant presented no evidence that the

Toyota Acknowledgment of Offer related to a *different* policy.

    3.    <u>The Legal Sufficiency of Plaintiff's Original Offers of UM/UIM Benefits</u>

Defendant argues that Douglas's waivers of UM/UIM coverage for both the

Chevrolet Policy and the Toyota Policy were not legally binding because neither

the Chevrolet Acknowledgment of Offer nor the Toyota Acknowledgment of Offer

satisfied the four-prong test established by *Mollena v. Fireman's Fund Ins. Co. of

Hawaii*, 72 Haw. 314, 816 P.2d 968 (1991).  ECF No. 28 at 27–28.

23

In order for Plaintiff to avoid an obligation to provide Defendant with UIM benefits under the Chevrolet Policy and the Toyota Policy, Plaintiff must have previously made legally sufficient offers regarding such coverage, and such offers must have been rejected.  Under Hawaiʻi Revised Statutes ("HRS") § 431:10C-301(b)(4),

> Coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles.  An insurer may offer the underinsured motorist coverage required by this paragraph in the same manner as uninsured motorist coverage; provided that the offer of both shall:
>
> (A)   Be conspicuously displayed so as to be readily noticeable by the insured;
> (B)   Set forth the premium for the coverage adjacent to the offer in a manner that the premium is clearly identifiable with the offer and may be easily subtracted from the total premium to determine the premium payment due in the event the insured elects not to purchase the option; and
> (C)   Provide for written rejection of the coverage by requiring the insured to affix the insured's signature in a location adjacent to or directly below the offer.

HRS § 431:10C-301(b)(4).  In addition,

> An insurer shall offer the insured the opportunity to purchase uninsured motorist coverage and underinsured motorist coverage by offering the following options with each motor vehicle insurance policy:
>
> (1)   The option to stack uninsured motorist coverage and underinsured motorist coverage; and
> (2)   The option to select uninsured motorist coverage and underinsured motorist coverage, whichever is applicable, up to but not greater than the bodily injury liability coverage limits in

the insured's policy.

> These offers are to be made when a motor vehicle insurance policy is first applied for or issued.  For any existing policies, an insurer shall offer such coverage at the first renewal after January 1, 1993.  Once an insured has been provided the opportunity to purchase or reject the coverages in writing under the options, no further offer is required to be included with any renewal or replacement policy issued to the insured.

HRS § 431:10C-301(d).  And finally,

> If uninsured motorist coverage or underinsured motorist coverage is rejected, pursuant to section 431:10C-301(b):
>
> (1)    The offers required by section 431:10C-301(d) are not required to be made;
> (2)    No further offers or notice of the availability of uninsured motorist coverage and underinsured motorist coverage are required to be made in connection with *any renewal or replacement policy*; and
> (3)    The written rejections required by section 431:10C-301(b) shall be presumptive evidence of the insured's decision to reject the options.

HRS § 431:10C-301(e) (emphasis added).

The Hawaiʻi Supreme Court has outlined a four-part test to determine whether an offer of uninsured or underinsured motorist coverage[6] is legally sufficient:

---

[6]  *See Mollena*, 72 Haw. at 322, 324–25, 816 P.2d at 972–73 (discussing the four-part test with respect to HRS § 431-448, and noting that the statute was recodified as HRS § 431:10-213 and amended to provide for written rejection of underinsured motorist coverage — with the same rationale applying to uninsured motorist coverage — both of which were addressed in HRS § 431:10C-301).

> (1) if made other than face-to-face, the notification process must be commercially reasonable; (2) the limits of optional coverage must be specified and not merely offered in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insurer must apprise the insured that the optional coverage is available for a relatively modest increase in premium.

*Mollena*, 72 Haw. at 320, 816 P.2d at 971 (citing *Hastings v. United Pac. Ins. Co.*, 318 N.W.2d 849 (Minn. 1982)).  "If the insurer cannot show that the four-part test has been met, then coverage is implied as a matter of law." *Id.* (citations omitted).

With respect to whether the notification process was commercially reasonable, Defendant maintains that the Chevrolet Acknowledgment of Offer was deficient because there was no evidence as to how the offer was made.  ECF No. 29 ¶ 10.  Defendant's conclusory statement is insufficient to create a genuine issue of material fact as (1) the nature of UM/UIM coverage, (2) the two coverage options available (stacking and non-stacking), and (3) the option to purchase UM/UIM coverage, were all explained in the Chevrolet Acknowledgment of Offer, which Douglas signed, choosing to reject UM/UIM coverage.  *See* ECF No. 21-3.

Defendant claims that the Chevrolet Acknowledgment of Offer fails to satisfy the second *Mollena* requirement — that the limits of optional coverage be specified and not offered merely in general terms.  ECF No. 29 ¶ 10.  Defendant's characterization aside, the Chevrolet Acknowledgment of Offer provides examples

26

of the coverage available per person and per accident under the stacking and non-stacking options, stating that such coverage could contain limits up to the Bodily Injury Liability Coverage limits.  ECF No. 21-3 at 2.

Defendant posits that the Chevrolet Acknowledgment of Offer does not satisfy the third *Mollena* requirement as it "failed to intelligibly advise[] Douglas of the nature of the optional coverage."  ECF No. 29 ¶ 10 (capitalization omitted). Once again, it is apparent from the face of the Chevrolet Acknowledgment of Offer that it did indeed satisfy this requirement as it provides a plain language explanation of how UM/UIM coverage works.  Specifically, the Chevrolet Acknowledgment of Offer stated that UM coverage "pays you, resident relatives and passengers in the insured automobile any monetary damages you are legally entitled to recover, up to the limit selected, as a result of bodily injury or death caused by an uninsured or hit-and-run motorist," and that UIM coverage "is a separate and distinct coverage which protects you, resident relatives and passengers in the insured vehicle when death or bodily injury is caused by a motorist who has inadequate insurance coverage."  ECF No. 21-3 at 1.

Finally, Defendant argues that the Chevrolet Acknowledgment of Offer and the Toyota Acknowledgment of Offer failed to satisfy the fourth prong of the *Mollena* test because Plaintiff did not advise Douglas of the "cost effect of 'stacking' versus 'non-stacking,'" and instead only itemized the costs associated

27

with the non-stacking option.  ECF No. 28 at 28.  Plaintiff responds that *Mollena* only requires that the insurer "'apprise the insured that the optional coverage is available for a relatively modest increase in premium,'" and that both the Chevrolet Acknowledgment of Offer and the Toyota Acknowledgment of Offer do so.  ECF No. 38 at 14 (quoting *Mollena*, 72 Haw. at 329, 816 P.3d at 971).

The Chevrolet Acknowledgment of Offer and the Toyota Acknowledgment of Offer each contain a statement that non-stacking coverage costs less than the stacking option, and cases from this District suggest that this is sufficient.  ECF No. 21-3 at 1; ECF No. 21-6 at 1.  In *Ranger v. State Farm Insurance Cos.*, 333 F. Supp. 2d 935 (D. Haw. 2004), the insurer provided various coverage options with varying policy limits and stacked and non-stacked permutations, but the court concluded the document provided to the insured was "not deficient because the statement that non-stacked coverage costs less than stacked coverage was accurate." *Ranger*, 333 F. Supp. 2d at 940.  Similarly, in *Smith*, although the insureds contended that the insurer's offer of UM/UIM coverage did not satisfy the fourth *Mollena* requirement, the court concluded the requirement was satisfied as the insurer had disclosed that "stacking may be available for only a 'modest increase in [the insured's] premium', [sic] and also that '[i]n some limited situations, [s]tacked UM and UIM coverage may cost less than Non-Stacked UM and UIM coverage.'" *Smith*, 2017 WL 11143899, at *8–9 (alterations in original)

28

(citation omitted).  Here, both the Chevrolet Acknowledgment of Offer and the Toyota Acknowledgment of Offer state that non-stacking coverage "costs less than the Stacking option" and that stacked coverage "costs more than the Non-Stacking option."  ECF No. 21-3 at 1; ECF No. 21-6 at 1.  As this language is substantially similar to that deemed acceptable in *Ranger* and *Smith*, the Chevrolet Acknowledgment of Offer and the Toyota Acknowledgment of Offer each satisfied the fourth *Mollena* requirement.

The Court therefore concludes that Plaintiff's offer of UM/UIM coverage to Douglas with respect to both the Chevrolet Policy and the Toyota Policy satisfied each of the four *Mollena* requirements and, therefore, Douglas effectively declined UM/UIM coverage when he executed the Chevrolet Acknowledgement of Offer and the Toyota Acknowledgement of Offer.

4.   Whether Douglas's Death Caused a Material Change in Each Policy

Defendant argues that Douglas's death caused a material change in the Edwardine Policies and that Plaintiff was thus required to provide Edwardine with new offers of UM/UIM coverage.  ECF No. 28 at 22–25.  Plaintiff argues that Douglas's death did not cause a material change in each policy as Edwardine, previously a named insured under each policy, simply became the sole named insured, and that there was therefore no change in the legal relationship between Plaintiff and Edwardine.  ECF No. 20-1 at 23–24.

29

In *Allstate Insurance Co. v. Kaneshiro*, 93 Hawaiʻi 210, 998 P.2d 490 (2000), the Hawaiʻi Supreme Court held that "when a material change is made to an existing policy, the resulting policy is not a 'renewal or replacement policy' and a new offer of optional UM/UIM coverage is required." *Kaneshiro*, 93 Hawaiʻi at 217, 998 P.2d at 497. "[T]he inquiry into whether . . . changes are material is a fact specific determination to be made based upon the totality of the circumstances." *Id.* Recognizing that a "UM/UIM policy is personal to the named insured . . . [and that] coverage attaches to the insured person, not the insured vehicle," courts must "consider how [a] change affects the legal relationship and obligations between the insurer and insured" in order to determine "whether there has been a material change to an existing policy." *Id.* at 219–20, 998 P.2d at 499–500 (citation omitted). "[C]hanging the identity of the named insured, in and of itself, may not necessarily constitute a material change to the policy"; instead, "[t]he change of the named insured must have a significant impact on the legal relationship and obligations between insurer and insured under the policy, and the impact of that change must be considered in light of any other changes in the policy and . . . public polic[y]." *Id.* at 220, 998 P.2d at 500.

In *Kaneshiro*, a husband obtained an insurance policy in which he was the sole named insured, with his wife identified as the insured's resident spouse and named on the policy as a listed driver of the insured vehicle. *Id.* As a result of

their pending divorce, the husband was deleted from the policy; the wife became the sole named insured; and the insurer received notice that the wife was no longer the husband's resident spouse.  *Id.*  The Hawaiʻi Supreme Court concluded that these changes amounted to a material change:  because when "coverage became personal to [*the wife*], and *her* risk of loss was insured," "the legal relationship and obligations between [the insurer] and [the wife] were significantly impacted."  *Id.* The court further noted that the policy was also amended to insure an additional vehicle, and that it would not have been a burden on the insurer to provide the wife with a new offer of UM/UIM coverage when the husband had met with his insurance agent face-to-face over several days to request changes to the policy. *See id.*

Based on the Hawaiʻi Supreme Court's reasoning in *Kaneshiro*, one court in this District concluded that no material change occurred when a policy was amended to add a non-named insured as a driver on the policy.  *See Lee*, 911 F. Supp. 2d at 969 ("The addition of [the named insureds' daughter] as a driver . . . did not alter the legal relationship between [the insurer] and the [named insureds] so as to constitute a material change to the . . . [p]olicy.").  And in *Smith*, that same court concluded that no material change occurred when the insureds "substitut[ed] one vehicle for another and . . . ma[de] changes to the personal injury protection coverage."  *Smith*, 2017 WL 11143899, at *13.  There, the court distinguished the

policy modifications from that in *Kaneshiro*, pointing out that there was no alteration to the named insureds, nor a switch from a single-vehicle policy to a multi-vehicle policy; and that unlike in *Kaneshiro* (where the husband and wife were pending divorce and only the husband had rejected UIM coverage), both insureds had rejected UIM coverage and did not change their marital relationship. *See id.*

Based on the foregoing cases, the Court concludes that Douglas's removal as a named insured following his death and Edwardine's resulting status as the sole named insured was not a material change triggering an obligation on Plaintiff's part to make a new offer of UM/UIM coverage.  The *Kaneshiro* Court emphasized that UM/UIM coverage is personal to the named insured as it is the named insured's risk of loss that is insured.  *See Kaneshiro*, 93 Hawaiʻi at 220, 998 P.2d at 500.  And the parties do not dispute that Douglas, as a named insured, had the authority to waive UM/UIM coverage for himself and on behalf of Edwardine.  Thus, insofar as Edwardine was a named insured on both policies before and after Douglas's death, there was no significant change in the legal relationship between Plaintiff and Edwardine.  As further discussed, nothing in the record suggests any substantial change in the legal obligations running from Plaintiff to Edwardine — or vice versa — following Douglas's death.

In *Kaneshiro*, the Hawaiʻi Supreme Court clarified its holding by way of a

32

hypothetical, explaining that "the legal relationship among [the insurer], [the wife], and [the husband] would not have been significantly impacted had [the husband] remained on the policy as a named insured and merely added [the wife] as an additional named insured while [the wife] was [the husband]'s resident spouse." *Id.* This clarification highlights that a policyholder can add a resident spouse as an additional named insured without that singular change creating a material change to the policy. *See id.*

Although the foregoing clarification in *Kaneshiro* is arguably dicta, the Court's conclusion is nevertheless consistent with it. Deeming such a standalone change immaterial does not mean that the *Kaneshiro* court concluded a material change occurred simply because the husband was deleted from the policy. Instead, the concurrent deletion of the husband and his vehicle, *and* the addition of the wife and her vehicle — which together amounted to a "substitution" of the wife and her vehicle on the policy — constituted a material change when analyzed under the totality of the circumstances. *See id.*

In contrast, here, there was no such "substitution" as Edwardine was already a named insured on the Edwardine Policies, and no new vehicles were added thereto. This case is therefore distinguishable from *Kaneshiro* as Edwardine's risk of loss was insured both before and after Douglas's death.

Nor did a material change occur, as Defendant argues, because Douglas

stated on the application for the Chevrolet Policy that he would be using the vehicle 100% of the time. ECF No. 28 at 21. Regardless of who the designated driver was, the Chevrolet Policy was nonetheless personal to Edwardine both before and after Douglas's death because Plaintiff was still insuring her risk as a named insured on the policy as to that vehicle. Thus, the legal relationship did not change simply because Edwardine, already a named insured, replaced Douglas as the driver of the vehicle. *See Lee*, 911 F. Supp. 2d at 969 (holding that the addition of a driver did not cause a material change in the policy).

Defendant argues that the deletion of Douglas from both policies following his death was a material change because it (1) changed the basis on which the applications were originally submitted; (2) amended the policy premiums; and (3) resulted in Edwardine's sole responsibility for the insured's obligations under each policy. *See* ECF No. 28 at 24. These arguments lack merit for the following reasons.

First, the Court's inquiry is not simply whether any aspects of the policies changed over time; instead, the Court must examine whether a material change occurred at a particular point thereby requiring a new offer of UM/UIM coverage; that is, a change that relates to the legal relationship between the insurer and the insured. In both *Lee* and *Smith*, the court concluded that no material change had occurred, despite the evolution of the insureds' circumstances following the

34

original issuance of the policies at issue. *See Lee*, 911 F. Supp. 2d at 969; *Smith*, 2017 WL 11143899, at *13.

Second, even if there was evidence in the record establishing that the premiums changed immediately after Plaintiff received notice of Douglas's death, a change in premiums alone does not establish a material change as it does not meaningfully alter the legal relationship between the parties. Further, Hawaii's insurance code expressly provides that a new offer of UM/UIM coverage is not necessary for renewal or replacement policies, and any revisions to the policies in this case resulted in renewal or replacement policies for the reasons stated above. *See* HRS § 431:10C-301(e)(2).[7]

_____

[7] Defendant appears also to contend in his Separate and Concise Statement of Facts that following Douglas's death, Plaintiff issued Edwardine new policies with new policy numbers and different premiums. *See supra* n.1; ECF No. 29 ¶ 8. While Defendant mentions this issue in his Opposition, he does not provide any argument to explain why new numbers and different premiums necessarily mean new policies were issued, or that the legal relationship between Plaintiff and Edwardine changed. *See* ECF No. 28 at 21–22. Even if Defendant had argued that the change in policy numbers — the substitution of the "A" at the end of the Chevrolet Policy with a "B," and the addition of a "B" at the end of the Toyota Policy, *see supra* n. 1 — constituted a material change in either policy, the Court would have rejected this argument because the changes to the policy numbers had no discernible effect on the legal relationship between Plaintiff and Edwardine. *See Kaneshiro*, 93 Hawaiʻi at 220, 998 P.2d at 500; *see also id.* at 217, 998 P.2d at 497 (discussing a Louisiana case that concluded "a change in policy numbers does not necessarily indicate a new policy has been issued rather than a renewal or substitute policy" (citation omitted)). Finally, the Declarations Pages to the Edwardine Policies issued after Douglas's death state that the respective policies "[r]eplaced" the policy with the prior number, and replacement policies do not

(continued . . .)

And finally, as previously discussed, there is no basis to conclude that Edwardine's new status as the sole named insured following Douglas's death amounted to a change in the legal relationship between Plaintiff and Edwardine.  Douglas's waiver of UM/UIM coverage was effective as to both Douglas and Edwardine before Douglas's death, and Defendant does not argue otherwise, notwithstanding his argument that the waiver failed to satisfy the *Mollena* requirements, which the Court has already analyzed at length.  *See supra* Section III.B.3.  Defendant's arguments fail to counter the plain, undisputed facts of Plaintiff's continuing obligation to insure *Edwardine's* risk, and Edwardine's ongoing obligation to perform under the two contracts.

The Court therefore concludes that as a matter of law, Douglas's rejection of UM/UIM benefits for both the Chevrolet Policy and the Toyota Policy remained in full force and effect at the time of the Accident, and that Plaintiff therefore had no obligation to provide Defendant with UIM benefits under either policy following the Accident.

---

(. . . continued)
require a new offer of UM/UIM coverage (though the notation that the policies replaced earlier policies does not end the analysis as to whether a "material change" in the policies occurred).  ECF Nos. 21-4, 21-7; *see* HRS § 431:10C-301(e)(2).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for

Summary Judgment, ECF No. 20, and DENIES Defendant's Motion to Dismiss,

ECF No. 35.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, September 23, 2021.



Jill A. Otake
United States District Judge

Civil No. 20-00349 JAO-RT, *State Farm Mutual Automobile Insurance Company v. Santiago*; ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION TO DISMISS